**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

MEGAN SANGER,

       Plaintiff,

    vs.                                            Civil No.11-455 WJ/KBM

CITY OF ALBUQUERQUE, and
SAM AGUILAR,

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,</u>**
**<u>GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT,</u>**
**<u>GRANTING CITY'S MOTION TO AMEND ANSWER NUNC PRO TUNC, and</u>**
**<u>GRANTING DEFENDANTS' MOTIONS TO EXCLUDE EXHIBIT</u>**

     THIS MATTER comes before the Court upon the following motions:

- Defendant City of Albuquerque's Motion to Amend/Correct Answer to Complaint, filed May 21, 2012 (**Doc. 76**);

- City of Albuquerque's Motion to Strike Exhibit 4 to Plaintiff's Response to Motion for Summary Judgment, filed May 4, 2012 (**Doc. 67**);

- Defendant Aguilar's Motion to Exclude Exhibit Attached to Plaintiff's Motion for Partial Summary Judgment, City's Motion for Summary Judgment and Plaintiff's Response to Aguilar's Motion for Summary Judgment, filed May 11, 2012 (**Doc. 70**);

- Motion for Summary Judgment on Behalf of Defendant Sam Aguilar, filed April 2, 2012 (**Doc. 58**);

- City of Albuquerque's Motion for Summary Judgment, filed March 6, 2012 (**Doc. 49**); and

- Plaintiff's Motion for Summary Judgment, filed April 30, 2012 (**Doc. 64**);[1]

---

[1] In one of the pleadings, Plaintiff hints at the prematurity of the City's motion for summary judgment, stating that Mr. Aguilar's deposition was not taken at the time Plaintiff responded to the summary judgment motion and that discovery was necessary in order to properly respond.  Doc. 60 at 2.  However, Plaintiff has not made any semblance of a request

Having considered the parties' briefs and the applicable law, I find the following:

• Defendant City's motion to amend the answer to include the affirmative defense for supervisory liability under Title VII is granted nunc pro tunc;

• The Court will not consider the Baldwin Report, even if it may be considered admissible as an exception to hearsay and thus Defendants' motions on excluding this report is granted; and

• Defendants are entitled to summary judgment on all of Plaintiff's claims, while Plaintiff's motion for summary judgment is denied.

## BACKGROUND

This case was filed in the Second Judicial District of New Mexico, County of Bernalillo, and removed by Defendants on May 31, 2011. Plaintiff brings claims for violations of her civil rights pursuant to the Civil Rights Act of 1964, specifically claiming constructive discharge, sexual harassment, gender and race discrimination. She alleges that, while employed as a temporary employee for the City of Albuquerque ("City") under the supervision of Defendant Sam Aguilar, Aguilar made multiple sexual and racial comments to her which included, but were not limited to, physically touching her in an inappropriate manner. The Complaint asserts ten counts: Constructive Discharge (Count I); Sexual Harassment (Count II); Gender Discrimination (Count III); Race Discrimination (Count IV); Defamation (Count V); Intentional Infliction of Emotional Distress (Count VI): Breach of Employment Contract(Count VII); Violation of New Mexico Human Rights Act (Count VIII); Violation of the Civil Rights Act of 1964 (Count IX); Prima Facie Tort (Count X).

---

under Fed.R.Civ.P. 56(d) in seeking additional time or discovery before being required to respond to the City's motion. Further, Mr. Aguilar's deposition was taken on April 13, 2012 (*see* Doc. 71-2), and Plaintiff filed her own summary judgment motion after that deposition was taken. As a result, the Court sees no need for delaying a ruling on any of the pending motions.

The facts in this case are largely undisputed.  For this reason, the Court considers the three pending dispositive motions together.  Also, because the factual presentations and positions of Defendant Aguilar and the City are aligned, the Court will refer to both Defendants' motions together, unless there is a reason to do otherwise.  Before launching into the undisputed facts in this case, the Court makes the observation, as Mr. Aguilar has, that Plaintiff has not complied with the requirements of D.N.M.LR-Civ.56 in the response to Mr. Aguilar's summary judgment motion.  In her "amended" response to Mr. Aguilar's motion for summary judgment, Plaintiff fails to identify the specific facts that are disputed, and to "refer with particularity" to those portions of the record upon which the non-movant relies.[2]   However, Plaintiff has complied with the relevant local rule in her response to the City's motion for summary judgment.  Thus, the Court has been presented with each party's full presentation of the facts and purported disputes of fact.

After considering the full range of legal arguments and facts presented by the parties, the Court concludes that Plaintiff's claims do not survive summary judgment, even where the Court was required to view the facts favorably to Plaintiff.  The inescapable fact is that, even if Plaintiff experienced sexual harassment at the hands of her supervisor Mr. Aguilar, the City took reasonable corrective measures immediately after it became aware of the situation.  Thus, because only the employer is liable under Title VII, *see discussion, below*, Plaintiff cannot prevail on those claims.  Plaintiff's other claims will be dismissed as well, either as a result of a

---

[2]   Plaintiff initially filed a response that was thirty-six pages long without having leave of Court to do so (Doc. 63), and was subsequently granted leave to file a response that was shorter but still in excess of the page limitations set forth in the local rules (Doc. 73)   Although the second response is not captioned as an "amended" response – which would have been helpful to the Court to do so—the Court construes it as such.

threshold analysis or because Plaintiff has failed to create a factual dispute to the facts presented by Defendants.

## I.      Undisputed Facts[3]

Plaintiff worked in the Graffiti Division of the City's Solid Waste Management Department.  She obtained the job, which was a temporary position, through Select Staffing Temporary Services ("Select Staffing").  Plaintiff worked at the Graffiti Division for three weeks, from September 21, 2009 to October 9, 2009.  Plaintiff had recently graduated with a bachelor's degree in community planning, and, while not happy about working in data entry in the City's Graffiti Removal Division (*see* Doc. 59-1 at 57-58), was optimistic that the job might open up full-time employment possibilities with the City.  Plaintiff had a contract with Select Staffing for temporary positions, but did not have a contract with the City.

It is undisputed that Mr. Aguilar was one of Plaintiff's supervisors in the Graffiti Division.  Doc. 73, Statement of Undisp. Fact ("SUF") No. 3; Doc. 6, SUF No. 5.  While Mr. Aguilar did not have the authority to hire or fire Plaintiff and had an office in another building, he would assign Plaintiff tasks through another employee named Maria (apparently also referred to as "Mari" in the pleadings), and also had the authority to make recommendations about termination to the lead supervisor.[4]

Plaintiff alleges that, during the second and third weeks of her employment with the City,

---

[3]  The facts presented here are supported by the parties' exhibits and are undisputed unless noted.

[4]  There is no discussion,and does not appear to be a dispute, by the parties as to whether Mr. Aguilar's authority was sufficient to meet Title VII's definition of "supervisor" as someone with immediate or successively higher authority over the employee.  *See*, *Gunnell v. Utah Valley State College* 152  F.3d 1253, 1261 (10th Cir. 1998).

Mr. Aguilar's comments and conduct created a hostile work environment.  The specific instances she alleges as sexual harassment/race discrimination are as follows:

(1)     during the first week of her employment with the Graffiti Division, Aguilar would wink at her and lick his lips;

(2)     Aguilar told Plaintiff to go buy new jeans because she had holes in hers. She stated that she had very long legs and it was hard to get jeans to fit. Mr. Aguilar then stated that her body was just right, making an "ok" sign with his fingers;

(3)     Aguilar made comments that everyone was lazy at an old job site where he worked and that he worked with a bunch of "miates," which plaintiff took as meaning the"n----" word in Spanish. When Plaintiff told Aguilar her daughter was half African-American, he no longer made similar comments, although Plaintiff stated in her deposition that Aguilar attempted to make a joke of it after being told that Plaintiff's daughter was African-American;

(4)     Aguilar was going to get gas and asked people in the office if anyone wanted candy. Plaintiff said she liked Milk Duds.  Plaintiff stated in her deposition that Aguilar leered at her and said, "Oh, you like those sweet brown balls, don't you"?;

(5)     On her last day of work for the Graffiti Division, Aguilar was looking over Plaintiff's shoulder at a picture of Plaintiff which she had up on her computer. Aguilar allegedly reached his hand into the back of Plaintiff's hair and pulled her ear to his mouth, saying words to the effect of, "that's f------ sexy" and "let's go have an affair," in another room.  It is not clear whether Plaintiff remembers Aguilar using the words "sexy" or "affair."  *See* Doc. 59-1 at 101 & 132.[5]

Plaintiff did not return to her job after October 9, 2009.  While Plaintiff did not tell Mr. Aguilar that she found his comments and conduct inappropriate or offensive, she tried to deflect his comments or change the subject.  Doc. 59-1 at 102.  Defendant Aguilar denies the above comments and conduct.

---

[5]  Plaintiff did not include the last of these comments by Mr. Aguilar in her EEOC charge.  However, neither Defendant argues failure to exhaust, nor would such an argument prevail.  Under *National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), a court may consider hostile environment acts outside of the 300-day limitations period, as long as part of the same hostile environment claim, and there's a relationship between acts alleged after the beginning the of the filing period, and the acts alleged before the filing period.  Both requirements are met here.

Plaintiff reported Mr. Aguilar's alleged comments within a day or two of their happening to Select Staffing, requesting another City job if available.  Plaintiff was told by Select Staffing that she would be kept in mind if something opened up.  Doc. 59-1 at 29.  It is undisputed that Plaintiff never complained about or reported any of Mr. Aguilar's comments or conduct to anyone in the Graffiti Department, or anyone else at the City, or any other supervisor.   Plaintiff directed her complaints to Select Staffing, and she also mentioned  Mr. Aguilar's behavior to a co-worker named "Maria" who, according to Plaintiff, was supportive of Plaintiff, but told Plaintiff to "just brush it off" and "get used to it."  Doc. 59-1 at 117:19-22.

Select Staffing eventually reported the situation to the City, but that occurred at some point after the last of the incidents when Mr. Aguilar allegedly grabbed plaintiff's hair.  In fact, the evidence shows that Select Staffing informed the City *after* Plaintiff advised Select Staffing on Monday morning October 12, 2009, that she "wasn't going to be able to return" to the City position at the Graffiti Division.  *See* Doc. 59-1 at 32.  After leaving the job at the City, Select Staffing did not offer Plaintiff any other positions.  Upon being notified by Select Staffing about Mr. Aguilar's conduct on or after October 12th, someone from the City called Plaintiff to discuss the situation, and to initiate an investigation.  Doc. 59-1 at 29-30 &122.

Two weeks after not returning to the job, Plaintiff was contacted by someone from the City, informing her that Mr. Aguilar had been transferred to a different department and offering Plaintiff her previous position at the Graffiti Removal Department.  Plaintiff refused to accept the position, even though she knew Mr. Aguilar had been transferred.[6]  Doc. 59-1 at 111, 136.  Plaintiff admitted that she no longer had any apprehension concerning Mr. Aguilar once he had

---

[6]  Plaintiff noted at her deposition that her interrogatory responses were incorrect in stating that *she* was offered a job transfer in a different department; it was Mr. Aguilar who had been transferred to another department. Doc. 59-1 at 112-13.

been transferred (Doc. 59-1 at 132-33).  Nevertheless, Plaintiff stated that she would not

consider returning to the Graffiti Division, or in the Solid Waste Management Department unless

it was "up front."  Doc. 59-1 at 136-37.

Plaintiff admits that she has not been denied a job at the City based on what happened

with Mr. Aguilar.  Doc. 59-1 at 135.   She has also never applied for any position with the City.

Six or seven weeks after declining the City's job offer, Plaintiff found a position with the law

office of Mr. Joseph Camacho, who is currently representing her in this lawsuit.  Plaintiff

explained that she found out about the law firm position through her friend "Cat" who is Mr.

Camacho's paralegal. Plaintiff remained at that position for about a year before moving to

Austin, Texas.  Doc. 59-1 at 119-21.[7]

## II.    Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of

material fact and, viewing the record in the light most favorable to the non-moving party, the

movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th

Cir. 2007); *Boling v. Romer,* 101 F.3d 1336, 1338 (10th Cir. 1996). Once the party moving for

summary judgment properly supports its motion, it is incumbent on the non-moving party to

respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*,

928 F.2d 978 (10th Cir. 1991), *overruled on other grounds by Kendrick v. Penske Transp. Svcs.*,

220 F.3d 1220, 1228 (10th Cir. 2000). The non-moving party may not rest on averments in its

pleadings, but instead must establish specific triable issues. *Gonzales v. Miller Cas. Ins. Co. of

Texas*, 923 F.2d 1417 (10th Cir. 1991).  The mere existence of some alleged, immaterial factual

---

[7]  The narrative in this last paragraph is derived from Plaintiff's own statements in her
deposition.

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## DISCUSSION

The Court first addresses motions which are necessary to resolve before turning to the parties' cross-motions for summary judgment.

## I.     City of Albuquerque's Motion to Amend/Correct Answer (Doc. 76)

Defendant seeks to amend its answer to add the affirmative defense that was set forth in *Burlington Industries, Inc. v. Ellerth* 524 U.S. 742 (1998) and *Faragher v. v. City of Boca Raton*, 524 U.S. 775(1998) ("*Ellerth-Faragher* defense").  The defense is available to employers in Title VII actions when no tangible employment action was taken against the employee and when: (1)  the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *See Faragher*, 524 U.S. at 807.  Defendant asserts that Plaintiff, although she complained of sexual harassment to her temporary employment agency, did not complain to the City of Albuquerque where she was working.  Despite that fact, she now seeks to hold the City liable for alleged sexual harassment it did not have the opportunity to correct, and which it did correct as soon as it learned of Plaintiff's complaints.

Under the Federal Rules of Civil Procedure, leave to amend will be freely given when right and justice so require. Fed. R. Civ. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962). A district court should deny leave to amend only when it finds "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10thCir.1993).

Plaintiff contends that the motion is untimely. Rule 8(c) of the Federal Rules of Civil Procedure requires that affirmative defenses must be asserted in a party's response to a preceding pleading. The goal of this requirement is to provide notice to the opponent, avoid surprise and undue prejudice and to afford the opponent a chance to argue, if able, why the defense is unfounded. *See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076-77 (10th Cir. 2009). Normally, the Court would deny a motion that sought to add an affirmative defense at this point in the litigation. However, in this case it would be unfair to expect Defendant to have read the complaint to include a Title VII claim based on vicarious liability.

The complaint asserts claims brought in "violation of the Civil Rights Act of 1964," sexual harassment and gender and race discrimination, but never mentions Title VII anywhere in the complaint. Nor is Title VII mentioned in the Joint Status Report (Doc. 12). Count II, which alleges sexual harassment (but with no reference to Title VII), does so based only on the City's negligence: "Defendant City was aware of prior complaints and had done nothing except ratify the harassment by doing nothing." Compl., ¶ 37 (Count II). It is hardly surprising that Defendant would not assert a defense to a legal theory that was not alleged or inferred in the complaint. Perhaps the City should have been overly cautious and asserted the *Ellerth-Faragher* defense in its initial answer. On the other hand, it would be unfair for Plaintiff's counsel to enjoy a windfall benefit based on a complaint that is so inartfully pleaded. Defendant states that it was not evident that Plaintiff was bringing her Title VII claim under a vicarious liability theory until an exchange of dispositive motions, and Plaintiff points to no pleading from which it can be inferred that Defendant had a basis for asserting the defense earlier. As a result, I find that any delay on Defendant's part is both excusable and minimal.

Plaintiff also argues that the affirmative defense is not available to the City because a tangible employment action was taken in the form of constructive discharge. Plaintiff

9

presumably is arguing here that the amendment would be futile.  However, the Court finds that the motion is neither prejudicial or untimely.  At the time Defendant's Motion to Amend was filed, no trial date had been set in this case.  While the issue of an affirmative defense should ordinarily be subject to Plaintiff's consideration prior to the deadline for filing dispositive motions, in this case, it is clear that Plaintiff would not be prejudiced.  As Defendant notes, Plaintiff has already built her case on, and presented argument on, issues responding to such a defense.  Defendant City would be prejudiced, because it potentially precludes one theory of employer liability under Title VII from the Court's consideration.  Further, it would waste time and resources for the Court and the parties for the case to proceed to trial on a technical exercise for what is clearly an unmeritorious claim.

Last, the amendment is not futile because Plaintiff's assertion of a constructive discharge claim does not in itself mean that a tangible employment action was taken—it means only that Plaintiff *alleges* that a such an action was taken.  As it turns out (see discussion below), Plaintiff's constructive discharge claim is patently doomed and thus there is no reason to deny Defendant's motion to amend on this basis.

Accordingly, the Court grants Defendant City's motion to amend answer to add the *Ellerth-Faragher* affirmative defense, and considers the amended answer (Doc. 76-1) as though it were filed nunc pro tunc with the entry of this Memorandum Opinion and Order.

II.     **Defendants' Motions to Exclude Plaintiff's Exhibit (Docs. 67 and 70)**

Both Defendants seek to exclude an exhibit attached to several of Plaintiff's pleadings (e.g., Ex. 4 to Pltff's Resp. to City's Mot. for Sum. J.).  The exhibit is the result of an investigation performed by an independent contractor for the City into Plaintiff's allegations against Mr. Aguilar.  The City engaged Ms. Baldwin to conduct an investigation into Plaintiff's charges once it became aware of the incidents involving Mr. Aguilar.  The report found

Plaintiff's sexual harassment claims to be "substantiated," meaning that they were not fabricated. Ms. Baldwin also found Plaintiff's allegations of derogatory racial remarks as "substantiated in part and inconclusive in part." *See* Doc. 60-4 at 5-7. Ms. Baldwin's conclusions were based on interviews with witnesses including the Plaintiff, Mr. Aguilar, a City employee and two Select Staffing employees.

Plaintiff relies on this exhibit ("the Baldwin Report") to show that the City was aware of prior harassment by Mr. Aguilar toward other female employees, but did nothing about those incidents. Plaintiff also wishes to present evidence, based on this exhibit, that the City transferred Mr. Aguilar and allowed him to retire with full benefits, instead of terminating him. Defendants contend that the Baldwin Report is not admissible based on hearsay and relevance grounds, arguing that Ms. Baldwin has no personal knowledge of the incidents (*See U.S. v. Hoffner*, 777 F.2d 1423 (10th Cir. 1985) (witness must have "firsthand knowledge" of events to which he is testifying). Defendants also contend that the report comes under no hearsay exception which would allow it to be admitted for the Court's consideration. Plaintiff, however, argues that the Baldwin Report was the City's "official response" to Plaintiff's claims of harassment, and that the City has effectively adopted the findings in the report.

The Court agrees with Plaintiff that the City, having initiated the investigation, cannot completely distance itself from the report now that it is complete and does not come to a conclusion more favorable to the City. Also, agency reports are admissible under Fed.R.Evid. 803(8)(C) if they are prepared pursuant to authority granted to the agency by law and are trustworthy. *Hall v. Western Production Co.*, 988 F.2d 1050, 1057-58 (10th Cir. 1993); *see Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 820-22 (10th Cir.1981) (holding that it was not error for the district court to refuse to admit a report of the Colorado Civil Rights Commission because the report was not trustworthy and there was a possibility that the report would prejudice

the jury).  However, a court has discretion under Fed.R.Evid. 403 to determine when otherwise

relevant, thus admissible, evidence should be excluded.  *Id*.  In this case, even if the Baldwin

Report may be admissible as a public record exception to the hearsay rule (which Plaintiff does

not specifically argue), it is irrelevant to Plaintiff's claims in this case.  Moreover, even if the

Court considered the report, the report's findings are not particularly helpful to Plaintiff, and the

outcome would be the same.

The Baldwin report concluded only that Plaintiff's claims of sexual harassment were

substantiated, that is, that they occurred.  The report does not conclude that sexual harassment

occurred as defined under Title VII, nor would Ms. Baldwin be qualified to make that

conclusion.   Plaintiff relies on the report to show that the City was aware of other complaints by

female employees about harassment by Mr. Aguilar. The report mentions two other incidents of

sexual harassment involving Mr. Aguilar.  One occurred in 2007, when Mr. Aguilar allegedly

made remarks about the female employee's body, and the other in 2009 when similar comments

were made to another female employee.  Mr. Aguilar received harassment avoidance training.

Doc. 60-4 at 3.  Through the admission of the Baldwin Report, Plaintiff intends to show that the

City responded inadequately to Plaintiff's complaint of harassment by simply transferring Mr.

Aguilar instead of terminating him.  However, the report has no bearing on the manner in which

the City handled Plaintiff's complaint.  The City had already taken action with regard to Aguilar

and offering Plaintiff her position back with the City four months before the Baldwin Report was

generated in January 2010. Further, one cannot consider the City's response to previous

complaints by other employees in the context of Plaintiff's complaints because the City did not

become aware of Plaintiff's complaints until *after* she left the Graffiti Division.  Finally, to the

extent Plaintiff is attempting to litigate the City's response to the other female employee's

complaints of harassment, the report is irrelevant because Plaintiff has no standing to bring a

lawsuit on behalf of these other female employees.  Accordingly, the Court will not consider the
Baldwin Report, even if it is admissible as a public record exception to hearsay, because it is
entirely irrelevant to Plaintiff's claims.  Defendants' motions as to the exclusion of the exhibit
are granted.

### III.     Title VII Claims and Claims Under New Mexico Human Rights Act (Counts II, III, IV, VIII and IX)

Plaintiff asserts claims brought under both Title VII and the New Mexico Human Rights
Act.  Plaintiff's allegations of race and gender "discrimination" in Counts III and IV are based
on her allegations of sexual harassment, which the Court assumes are brought under Title VII,
there being no mention in the complaint of any other federal statutory or constitutional basis for
those allegations.  The analysis of the federal law under Title VII tracks the analysis for the
Human Rights Act claim.  Thus, the Court considers both under a Title VII analysis.  *See Cates
v. Regents of the New Mexico Inst. of Mining & Tech.*, 124 N.M. 633, 638 (1998); *Orr v. City Of
Albuquerque*, 417 F.3d 1144 (10th Cir. 2005).

Title VII's prohibition against sex discrimination includes a ban on sexual harassment.
*Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986).[8]  For a hostile environment claim to
survive a summary judgment motion, a plaintiff must show that a rational jury could find that the
workplace was permeated with discriminatory intimidation, ridicule, and insult, that is
sufficiently severe or pervasive to alter the conditions of the victim's employment and create an
abusive working environment. *Penry v. Fed. Home Loan of Topeka,* 155 F.3d 1257, 1261 (10th
Cir. 1998) (quotation omitted). To evaluate whether a working environment is sufficiently
hostile or abusive, a court must examine all the circumstances, including: (1) the frequency of

---

[8]  The Court assumes, and there is no dispute, that Plaintiff meets the Title VII threshold
requirement of belonging to a protected class. *See Jaramillo v. Colorado Judicial Dept*, 427 F.3d
1303 (10th Cir. 2005).

the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance.  *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 23 (1993).

In *Burlington Industries, Inc. v. Ellerth* 524 U.S. 742 (1998) and *Faragher v. v. City of Boca Raton*, 524 U.S. 775(1998), the Supreme Court set forth the standard for vicarious liability for employers when the offensive conduct was committed by supervisors.  *See Harrison v. Eddy Potash, Inc.*, 158 F.3d 1371, 1375 (10th Cir. 1998) (noting that Burlington and Faragher focused attention on employer liability for hostile work environment created by a supervisor).  At the same time, the Supreme Court also recognized "the continuing validity of negligence as a separate basis for employer liability."  *Wilson v. Tulsa Jr. Coll. et al*., 164 F.3d 534, n.4 (10th Cir. 1998) (citing *Burlington*, 524 U.S. 742 (1998)). Under a negligence theory, an employer is directly liable for a hostile work environment created by any employee if the employer knew or should have known about the conduct and failed to stop it.  *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir.1999), *overruled on other grounds by  Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

A.      Individual Liability

Defendant Aguilar contends that he is not a proper party in a Title VII claim, and he is correct.  Under Title VII, individual capacity suits are not appropriate, and suits against individuals must proceed in their official capacity—which in this case involves the City as a Defendant.  *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993); *Butler v. City of Prairie City, Kan.*, 172 F.3d 736, 743 (10th Cir. 1999).  Thus, while Mr. Aguilar is appropriately named as a Defendant in Plaintiff's other claims, he is not a proper Defendant in Plaintiff's Title VII claim.

However, New Mexico law has acknowledged the possibility of individual liability for discrimination claims brought under the Human Rights Act.  *See, e.g.*, *Sonntag v. Shaw*, 130 N.M. 238, 242 (2001) (under the Human Rights Act, a plaintiff must exhaust his or her administrative remedies against a party before bringing an action in district court against that party); *Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) (affirming the dismissal of individual defendants because the plaintiff failed to exhaust administrative remedies against them).  A definitive answer to the question is unnecessary in this case, where the Court is dismissing Plaintiff's claims brought under both Title VII claims and the Human Rights Act on their merits.

Thus, the relevant inquiry here is whether (a) the City is liable for its own negligent behavior concerning the alleged harassing conduct toward Plaintiff because it knew or should have known about the harassment; or (2) whether the City is vicariously liable for Mr. Aguilar's conduct under *Ellerth* and *Faragher*.

B.   Hostile Environment Sexual Harassment Claims

Defendant Aguilar essentially equivocates about whether he performed the allegedly harassing behaviors, which the Court deems as a denial of the alleged conduct.  For example, Mr. Aguilar claims he had sought medical attention for dry eyes and was unaware he was licking his lips; he admits touching Plaintiff's hair, but not "aggressively." *See* Doc. 71 at 3.  Except for Mr. Aguilar's denial of his alleged conduct, the facts in this case are undisputed.   Thus, in considering the parties' cross-motions for summary judgment at the same time, the Court finds it more efficient to view the facts favorably to Plaintiff.  For purposes of Plaintiff's motion for summary judgment, the Court would normally view the facts favorably to Defendants.  However, in this case, there is no need to give Defendants the benefit of the doubt: while Defendants successfully withstand Plaintiff's summary judgment as non-movants in their legal

arguments, Plaintiff has failed to do so, even when viewing the facts favorably to her.

To prove that discriminatory conduct was pervasive, a hostile work environment plaintiff must present evidence of more than "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'"  Instead, "there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Industries, Inc*. 474 F.3d 675, 680 (10th Cir. 2007).  The severity inquiry includes both an objective and subjective analysis, the former involving the view from a reasonable person's standpoint.  *See Haug v. City of Topeka, Equipment Management Div*., 13 F.Supp.2d 1153, 1160 (D.Kan. 1998).

To review, Mr. Aguilar's alleged conduct is alleged as follows:

(1)     during the first week of her employment with the Graffiti Division, he winked at her and licked his lips;

(2)     he told Plaintiff (and made a sign indicating) that her body was "just right" when Plaintiff stated that she had very long legs and it was hard to get jeans to fit;

(3)     Aguilar made comments about working with lazy "miates," which Plaintiff construed as a negative description of African-Americans, particularly because her daughter is African-American;

(4)     After Plaintiff said she liked Milk Duds candy, Aguilar leered at her and said, "Oh, you like those sweet brown balls, don't you"?; and

(5)     Aguilar was looking over Plaintiff's shoulder at a picture of Plaintiff that was on her computer, reached his hand into the back of Plaintiff's hair and pulled her ear to his mouth, saying words to the effect of, "that's f------ sexy" and "let's go have an affair," in another room.

These five incidents occurred over a three-week period, and can best be characterized as comments with sexual innuendos, and a potential racial slur.  While Plaintiff may have felt uncomfortable with Mr. Aguilar's comments and conduct, the alleged incidents do not rise to the level of sexual harassment.  Mr. Aguilar's comment about "miates," which Plaintiff alleges as a form of racial discrimination, was not directed at Plaintiff.  Further, according to Plaintiff's own statements, once Mr. Aguilar discovered that Plaintiff's daughter was African-American, he

16

attempted to make a joke of it.  Doc. 59-1 at 91:8-13 and at 97:5-6.   The mere utterance of a statement which engenders offensive feelings in an employee does not affect the conditions of employment to a sufficiently significant degree to violate Title VII.  See  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citation omitted).  (quoting  *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971), *cert. denied*, 406 U.S. 957 (1972)).

Mr. Aguilar's alleged reaching into Plaintiff's hair and pulling her ear to his mouth is a more serious incident, but the relevant question is whether it is severe enough to give rise to a hostile environment claim, even when considered in the totality of Mr. Aguilar's alleged conduct.  In the context of other hostile environment cases, the Court finds that it does not rise to that required level of severity or pervasiveness.  *See, e.g., Creamer v. Laidlaw Transit, Inc*., 86 F.3d 167, 170 (10th Cir.1996) (holding that a work environment did not contain "pervasive" harassment when the plaintiff made general allegations of frequent "sexual slurs" and the only specific incident cited involved a co-worker grabbing the plaintiff).[9]  Mr. Aguilar's comments and conduct could certainly be perceived and described as crude and boorish, but they are not

_____

[9]  *See also, e.g.*, *Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000) (incident, among several other advances, where female supervisor grabbed buttocks of male subordinate, did not rise to the level of severe and pervasive, and summary judgment was affirmed); *Del Valle Fontanez v. Aponte*, 660 F.Supp. 145 (D.P.R.1987)( a single incident where a coworker called plaintiff to his office, locked the door, and pressed against her with an erect sexual organ was not sufficiently severe so as to constitute sexual harassment); *Meriwhether v. Caraustar Packaging Co*., 326 F.3d 990 (8th Cir.2003) (single incident of a co-worker's squeezing of employee's buttocks did not rise to level of severe or pervasive conduct); *Brooks v. City of San Mateo*, 229 F.3d 917, 921 (9th Cir.2000) (conduct of coworker who placed his hand on plaintiff's stomach and commented on its sexiness and then forced his hand underneath her sweater and bra to fondle her bare breast "is akin to that reported in cases where plaintiff was held not to have alleged harassment severe enough to support a hostile work environment claim"); *Saxton v. American Tel. and Tel. Co.*, 10 F.3d 526, 528-29, 534 (7th Cir.1993) (limited unwelcome advances by a supervisor including rubbing and kissing and attempted groping was not pervasive harassment).

sufficient either in terms of severity or pervasiveness, to have created an abusive or hostile environment.

Even assuming, however, that Mr. Aguilar's conduct did constitute sexual harassment under Title VII and the Human Rights Act, Plaintiff's claims still fail.  In order for Plaintiff to recover on this claim, she must present facts which show that the City is liable for Mr. Aguilar's conduct. This she has failed to do.

C.    <u>Liability of the City</u>

The facts concerning the City's knowledge of Mr. Aguilar's conduct toward Plaintiff, and of actions taken with regard to this conduct, are undisputed.  Based on those facts, the City is not liable for Mr. Aguilar's conduct, under any legal theory.

    *1.*     *Negligence Theory*

Under a negligence theory, an employer is directly liable for a hostile work environment created by any employee if the employer knew or should have known about the conduct and failed to stop it.  *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir.1999).  It is undisputed that, while Select Staffing knew of Plaintiff's complaints about Mr. Aguilar during the first week of Plaintiff's employment at the City, the City did not hear of Mr. Aguilar's conduct towards Plaintiff until after Plaintiff left the Graffiti Division and told Select Staffing that she would not return.  Under Plaintiff's own representation of the facts, Mr. Aguilar's last harassing conduct occurred on Friday, October 9, 2009.  The following Monday, October 12th, Plaintiff phoned Select Staffing from the Graffiti Division parking lot to tell the agency that she could not make herself go inside.  Select Staffing then notified the city, which in response to the information, conducted an investigation.  Doc. 73 at 9 (citing to portions of the record).  Other than Plaintiff's complaint to a co-worker, who advised Plaintiff to ignore Mr. Aguilar, Plaintiff

did not inform anyone else within the Graffiti Division or anyone who had a supervisory position with the City.  There is no evidence that the co-worker passed on any information regarding Mr. Aguilar's conduct towards Plaintiff to anyone in authority at the City, or that the City became aware of the situation by other means.  Therefore, even if Plaintiff suffered harassment as it is defined under Title VII, those claims fail under a negligence theory because (1) the City was not aware of Plaintiff's complaints until after Plaintiff decided to leave her employment and not return; and (2) once the City became aware of Plaintiff's complaints, the City conducted an investigation, responded to it by transferring Mr. Aguilar to a different department, and calling Plaintiff to offer her back her job.  That action effectively would have stopped the harassment, had Plaintiff agreed to return to work at her temporary position with the City.

### 2.      *Vicarious Liability Theory*

Under a vicarious liability theory, the City could be liable for Mr. Aguilar's conduct by virtue of Mr. Aguilar's position as a supervisor.  However, based on the undisputed facts, the City is protected by the  *Ellerth-Faragher* defense.[10]

First, Plaintiff unreasonably failed to take advantage of the complaint procedures in place regarding harassment provided by the City.  *See* Doc. 87, E's. D & D).  Plaintiff stated in her deposition that another male supervisor in the Graffiti Division named Mark assigned her work on a frequent basis.  However, Plaintiff did not mention Mr. Aguilar's conduct to him at any time.  She offers no reasonable excuse as to why she could not bring her complaints to anyone in authority at the Graffiti Division or at the City.  *See* Doc. 590-1 at 138:21-25 to 139:1-4. Plaintiff attempts to impute her complaints about Mr. Aguilar to Select Staffing as though they

---

[10]  The City's submission of the defense is late in coming, but the Court considers it nevertheless because the facts relevant to the defense are undisputed.

were made to the City.  There is no legal or factual basis for doing so.  If Select Staffing should have notified the City earlier, that is Plaintiff's issue with Select Staffing—not the City.  Nor is there any legal basis to hold the City liable for any delay by Select Staffing in advising the City about Mr. Aguilar's conduct.

Second, the City exercised reasonable care to prevent and correct the harassing behavior. It is critical (as well as undisputed) that the City was not aware of Mr. Aguilar's conduct towards Plaintiff during Plaintiff's employment at the Graffiti Division. The City conducted an investigation into the incidents immediately upon being advised of the situation by Select Staffing.  Mr. Aguilar was transferred to another department in another building, and Plaintiff was offered her previous job back.  The City's actions sufficiently meet the second prong of the *Ellerth-Faragher* defense.  *See Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (single incident in which fellow employee touched plaintiff's stomach and then her breast under her sweater, while very offensive, did not rise to the level of harassment for which Title VII offers a remedy, especially given that the city took prompt steps to remove fellow employee from the workplace).

Plaintiff suggests that a transfer was not sufficient as a response by the City, and that Mr. Aguilar should have been terminated.  An employer's remedial and preventative actions must be "reasonably calculated to end the harassment." *Adler v. Wal-Mart Stores, Inc.*  144 F.3d 664, 676 (10th Cir. 1998) (an employer must only respond reasonably, a response may be so calculated even though the perpetrator might persist). Plaintiff presents no facts which infer that the City's actions were inadequate in responding to and resolving Plaintiff's complaints.  Contrary to Plaintiff's position, terminating Mr. Aguilar could pose other problems for an employer. As the Tenth Circuit has noted, an employer "would inevitably face claims from the other direction of

20

violations of due process rights and wrongful termination." *MacKenzie vs. Denver, City And Co.*, 414 F.3d 1266 (10th Cir. 2005) (citing *Adler*, 144 F.3d at 676).

Plaintiff refused to return to work when the City offered her back the data entry position with the Graffiti Division.  She stated that she would not consider returning to employment at the same position, but would consider a job "up front."  Doc. 59-1 at 136-37.  In responding to complaints of sexual harassment, an employer is required to respond in a reasonable manner. The law does not require an employer to return the worker to a better post, or one that plaintiff considers to be more in keeping with her preference, skill or educational level.  Plaintiff's stated reason for not accepting her old job back was that she feared retaliation from co-workers. Plaintiff stated that she had "apprehension about going back" to a department where "this man [Aguilar]. . . was the supervisor for the City in this position for years and worked closely with all those people for a long time."  *See* Doc. 60-1 at 116:20-25; 117:1-3.  This is not even close to a reasonable explanation for Plaintiff's refusal to return to her job.   Plaintiff admitted that she no longer had any apprehension concerning Mr. Aguilar once he had been transferred (Doc. 59-1 at 132-33).  She also stated that no other person in the office harassed her.  Doc. 60-1 at 115:20-25; 116:20-25.  Her fear of retaliation arose simply from the fact that everyone at the office "would likely have known about the situation."  Doc. 60-1 at 117:1-3.  Worrying about what people might think is not a viable legal basis for a fear of retaliation.  Thus, the Court finds as a matter of law that the City's response to Plaintiff's complaints of harassment was reasonable.

Thus, the City has satisfied its burden on the affirmative defense on both prongs.  The Court concludes that, even assuming Plaintiff experienced sexual harassment at her job by Defendant Aguilar, the City is not liable for those claims.  *See, Helm v. Kansas*, 656 F.3d 1277 (10th Cir. 2011) (granting summary judgment in favor of state where plaintiff unreasonably

failed to take advantage of preventive or corrective procedures and where the state acted

reasonably to correct harassing behavior in response to the complaint).   Plaintiff's motion for

summary judgment is denied on these claims, and Defendants are entitled to summary judgment

on these claims; *see also McCann v. City of Truth or Consequences, et al*., Civil No. 07cv0606,

Doc. 176, filed Nov. 4, 2008 (declining to resolve whether alleged conduct rose to level of

sexual harassment, where employer was  entitled to an affirmative defense to plaintiff's hostile

work environment claim).

**IV.    Race and Gender Claims (Counts III and IV)**

Plaintiff's race and gender claims asserted in Counts III and IV are based on the same

harassing conduct discussed previously.  These counts do not allege any conduct distinct or

separate from Plaintiff's hostile environment claims.  Thus, these claims are dismissed, and

Defendants are entitled to summary judgment for the same reasons as given above for Plaintiff's

hostile work environment claims.

**V.    Constructive Discharge (Count I)**

For purposes of this discussion, the Court assumes that a temporary employee can bring a

constructive discharge claim.  Constructive discharge occurs when the employer by its illegal

discriminatory acts has made working conditions so difficult that a reasonable person in the

employee's position would feel compelled to resign.  *Sanchez v. Denver Public Schools*, 164

F.3d 527, 534 (10th Cir. 1998) (internal citations and quotations omitted).  Essentially, a plaintiff

must show that the working conditions had become so intolerable that she had *no other choice*

but to quit. *Id*.  *Woodward v. City of Borland*, 977 F.2d 1392 (10th Cir. 1992), *cert denied*, 509

U.S. 923 (1993).  The Court applies an objective standard to the inquiry, which means that the

plaintiff's subjective views are irrelevant.  *See Back v. Salar*, 398 F.3d 1210, 1216  (10th Cir.

2005).

There are several reasons why this claim does not survive Defendants' summary judgment.  First, courts require something more than a hostile environment claim to support a claim of constructive discharge. *Pennsylvania State Police v. Seders*, 542 U.S. 129 (2004) (noting that a hostile-environment constructive discharge claims entails working conditions so intolerable that a reasonable person would have felt compelled to resign).  In this case, Plaintiff's allegations of sexual harassment fall short of actionable.  Second, the *Ellerth-Faragher* defense available to the City on Plaintiff's hostile environment claims are likely available on this claim.  *Id*. (declining to rule that defense was never available in constructive discharge cases).  Last, and most critically, Plaintiff cannot claim any discriminatory actions taken by the City which compelled her to resign, where the City was unaware of her complaints until she decided not to return to work. The Court agrees with the City that the undisputed facts indicate do not form a basis for a constructive discharge claim.  The City launched an investigation into Plaintiff's complaints as soon as it became aware of them; it transferred Mr. Aguilar out of the Graffiti Division, and offered to place Plaintiff in a job where he was not present. In refusing to return to the job after Mr. Aguilar was transferred, Plaintiff effectively abandoned her job despite being asked to stay.  As discussed earlier, Plaintiff offers no reasonable basis for not returning to work except that she was worried about what people might think, and was hoping for a better position "up front."  Further, the incidents as Plaintiff alleges occurred over a five-day span, following which the City took immediate corrective action.  Defendants are entitled to summary judgment on this claim.

## VI.   Claims Brought Under the Tort Claims Act (Counts V, VI and X)

Plaintiff also brings claims of defamation, intentional infliction of emotional distress and

prima facie tort in Counts V, VI and X.   Defendants seek summary judgment on these claims on the grounds that the New Mexico Tort Claims Act does not contain a waiver of sovereign immunity for these claims.

The specific provisions of the New Mexico Tort Claims Act ("Tort Claims Act") limit potential tort liability of a governmental entity and its employees.  *See Pemberton v. Colorado*, 105 N. M. 476, 477 (Ct. App. 1987). The Tort claims Act provides governmental entities and public employees with immunity from tort suits unless there is a specific waiver of that immunity set forth under the Act. *See Weinstein v. City of Santa Fe*, 121 N. M. 646, 649, 916 P. 2d 1313, 1315 ( 1996).  The Court must strictly construe any provision purporting to waive governmental immunity. *See Armijo v. Department of Health & Environment*, 108 N. M. 616, 618, 755 P. 2d 1333, 1335 (Ct. App. 1989).  It is undisputed that Defendant Aguilar is a City employee. Thus, any tort claims asserted against Aguilar or the City must be subject to an express waiver of immunity under the Tort Claims Act, or otherwise dismissed.

Defendants are correct that the Tort Claims Act contains no waiver for any of the tort claims alleged by Plaintiff.  *See Salazar v. City of Albuquerque*  776 F.Supp.2d 1217, 1244 (D.N.M.,2011) (noting that the fact that the New Mexico Legislature expressly allows defamation claims against law enforcement officers suggests that they are not otherwise allowed under the Tort Claims Act);[11] *Romero v. Otero et al*, 678 F.Supp. 1535, 1540 (D.N.M. 1987); *Silva v. Town of Springer et al*, 121 N.M. 428, 435 (Ct.App. 1996) (no waiver of immunity for

---

[11]  While the Court need not pass on these claims on the merits, the Court cannot help but note that there is nothing meritorious about these claims.  For example, there is no evidence of any defamatory statement made regarding Plaintiff.  The complaint suggests that Aguilar "made sure Plaintiff knew" that he could injure her reputation and employment prospects if she did not tolerate his misconduct.  Compl., ¶ 47.  However, there is absolutely no evidentiary basis for that allegation.

plaintiff's claim of intentional infliction of emotional distress, since it is not one of the enumerated acts under § 41-4-12); *Tate v. Fish*, 347 F.Supp.2d 1049 (D.N.M. 2004) (accord); *Silva v. Town of Springer et al*, 121 N.M. 428, 435 (Ct.App. 1996) (prima facie tort claim summarily dismissed where plaintiff failed to show that the acts of defendants fell within a recognized exception to the immunity granted to public officers under the Tort Claims Act).

Plaintiff offers no substantive response on this issue.  She contends that the cases cited by Defendants are distinguishable because they do not concern sovereign immunity or governmental entities.  This is not accurate; the cases cited by Defendants are legally sound and on point.  Further, the few cases cited by Plaintiff are completely off target.  For example, Plaintiff cites to *Pennsylvania State Police v. Seders*, 542 U.S. 129 (2004), which involves Title VII claims, and contains no reference to state tort claims. *Suders* does contain the word "tort," but only to note that Title VII law "borrows from *tort* law the avoidable consequences doctrine." 542 U.S. at 146 (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764 (1998) (emphasis added).  It is not clear why Plaintiff would consider this case responsive to the question of sovereign immunity under the Tort Claims Act.

Plaintiff argues that Defendant Aguilar has failed to cite to any law or statute that allows him to sexually and racially harass subordinates.  If the Court were to construe this statement more liberally than it should, the statement might vaguely refer to the "scope of duty" question for state tort law claims.[12]  To the extent that Plaintiff may be attempting to argue that Mr.

---

[12]  Because Plaintiff is represented by a licensed attorney, the Court is under no obligation to construe arguments liberally.  *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (courts may construe pro se complaints liberally).  The Court would be justified in considering the "scope of duty" argument not raised by Plaintiff's counsel, and that Plaintiff has not satisfied the burden of showing that the tort claims fall within an exception to sovereign immunity under the Tort Claims Act.

Aguilar's wrongful conduct cannot be considered within the scope of duty (and therefore resulting in a waiver of immunity), the Court finds that the argument fails.  The New Mexico Supreme Court has considered this question, finding that intentional wrongful torts are not necessarily outside the scope of an employee's duties. *Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 43 (2001).  Because public employees are generally not directed to commit torts as part of their official duties, taking such a position "oversimplifies the issue" and "would completely nullify the Legislature's intent to provide governmental immunity against tort claims."  *Id*.  Further, New Mexico courts narrowly interpret "scope of duty." *Seeds v. Lucero*, 137 N.M. 589, 592 (N.M.App. 2005).  If the alleged wrongful conduct is connected with the employee's job, even if criminal, the conduct is still considered within the scope of duty for purposes of the Tort Claims Act.  *Id*.; *see Celaya v. Hall*, 135 N.M. at 115 (2004) (the Tort Claims Act "clearly contemplates including [those] who abuse their officially authorized duties, even to the extent of some tortious and criminal activity").

Thus, if Plaintiff had presented this argument at all, I would find that the alleged harassment (even assuming that the conduct rose to a constitutional level) had a sufficient connection to Mr. Aguilar's employment and the workplace to remain within the definition of scope of duty for purposes of the Tort Claims Act.  The alleged misconduct took place during the workday, at Aguilar's and Plaintiff's place of employment, during times when Plaintiff and Aguilar would have normally interacted.  Accordingly, Defendants are immune from Plaintiff's state law tort claims of defamation, intentional infliction of emotional distress and prima facie tort in Counts V, VI and X.

**VII. - Breach of Contract (Count VII)**

In Count VII, Plaintiff alleges that the City breached its contract with her by forcing her

26

out of the workplace.  Compl., ¶ 61.  Defendant contends that Plaintiff's employer was Select
Staffing, and not with the City.   On this point, the Court tends to agree with Plaintiff.  Although
this issue was not argued in depth by the parties, the Court finds that the fact that Plaintiff was
employed at the City through a temporary agency does not completely get the City "off the
hook" as Plaintiff's employer.  *See Freeman v. Kansas*, 128 F.Supp.2d 1311, 1316 (D.Kan.
2001) (concluding that state was plaintiff's employer for purposes of Title VII, even though
plaintiff was a temporary employee of a temp agency assigned to work at the state, where the
state exerted sufficient control by supervising plaintiff's daily activities and providing the place
of work and the tools to work).  The Court need not resolve this issue, since even as Plaintiff's
employer, no breach occurred.

Assuming there was a contract between Plaintiff and the City (as the City has also done
for sake of argument), Plaintiff's claim has no merit.  First, Plaintiff was a temporary City
employee.  Plaintiff specifies neither a particular contract or provision that was breached.  The
allegations relating to the breach of contract claim are essentially the same as those relating to
the constructive discharge claim.  Still assuming the existence of a contract, the undisputed
evidence is that the City did everything it could to prevent Plaintiff from losing her temporary
job, even after Plaintiff left without the City's knowledge.  Once aware of Plaintiff's situation
and refusal to return to work, the City responded immediately to resolve Plaintiff's complaints in
a timely fashion, rectifying the problem so that Plaintiff could return to work without further
unwanted attention from Mr. Aguilar.  No interpretation of the facts suggests a breach of
contract by the City, and therefore, Defendant City is entitled to summary judgment on this
claim.

## CONCLUSION

In sum, I find and conclude that Defendant City's motion to amend the answer to include the affirmative defense for supervisory liability under Title VII is granted and that the Court has considered the *Ellerth-Faragher* affirmative defense as available to Defendant in these findings. The Court considers the amended answer (Doc. 76-1) filed nunc pro tunc with the entry of this Memorandum Opinion and Order.

I also find and conclude that the Baldwin Report will be excluded on grounds of relevance, even assuming that it may be considered admissible as an exception to hearsay. Thus, Defendants' motions to exclude this report are granted.

Finally, I find and conclude that Defendants are entitled to summary judgment on all of Plaintiff's claims, and that Plaintiff's motion for summary judgment is denied.

**THEREFORE,**

**IT IS ORDERED** that:

1.  Defendant City of Albuquerque's Motion to Amend/Correct Answer to Complaint (**Doc. 76**) is GRANTED, and that the Court considers the amended answer (Doc. 76-1) filed nunc pro tunc with the entry of this Memorandum Opinion and Order;

2.  City of Albuquerque's Motion to Strike Exhibit 4 to Plaintiff's Response to Motion for Summary Judgment (**Doc. 67**); and  Defendant Aguilar's Motion to Exclude Exhibit Attached to Plaintiff's Motion for Partial Summary Judgment, City's Motion for Summary Judgment and Plaintiff's Response to Aguilar's Motion for Summary Judgment (**Doc. 70**) are both GRANTED in that the Baldwin Report will not be considered by the Court in ruling on Plaintiff's claims;

3.  Plaintiff's Motion for Summary Judgment (**Doc. 64**) is DENIED for reasons described in the above Memorandum Opinion and Order;

4.  Motion for Summary Judgment on Behalf of Defendant Sam Aguilar (**Doc. 58**); and City of Albuquerque's Motion for Summary Judgment (**Doc. 49**) are both GRANTED, specifically:

28

      a.       Defendant Aguilar is not a proper party to Plaintiff's Title VII action;

      b.       *Count II:* Plaintiff's Title VII claims are dismissed, granting Defendants summary judgment.  The alleged conduct does not rise to the level of sexual harassment.  Even assuming they do, the City is not liable for the harassment under either a negligence theory or a vicarious liability theory.

      c.       *Count VIII:* Plaintiff's Human Rights claims are dismissed, granting Defendants summary judgment on those claims for the same reasons as the Court has granted summary judgment for Plaintiff's Title VII claims;

      d.       *Counts III and IV:* Plaintiff's race and gender discrimination claims are subsumed under Title VII claims, granting Defendants summary judgment on those claims;

      e.       *Count I:* granting Defendants summary judgment on Plaintiff's Constructive Discharge;

      f.       *Counts V, VI and X:* granting Defendants summary judgment on Plaintiff's state law tort claims of defamation, intentional infliction of emotional distress, and prima facie tort;

      g.       *Count VII*: granting Defendants summary judgment on claim of breach of employment contract;

      h.       *Counts VIII and IX:* granting Defendants summary judgment on these counts, as they merely state the sources of law for Plaintiff's claims regarding race and gender (New Mexico Human Rights and the Civil Rights Act).

A Final Judgment will be entered with this Memorandum Opinion and Order.


_____

UNITED STATES DISTRICT JUDGE